FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 06, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH THOMAS M.,<br>                    Plaintiff,<br><br>      vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>                    Defendant. | No. 1:17-cv-00386-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 15, and denies Defendant's Motion, ECF No. 16.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

ORDER - 2

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

1  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

2  capable of performing other work; and (2) such work "exists in significant

3  numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

4  700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

6  On July 15, 2014, Plaintiff applied for Title II disability insurance benefits,

7  alleging a disability onset date of August 26, 2009. Tr. 194-201. The application

8  was denied initially, Tr. 132-34, and on reconsideration, Tr. 136-37. Plaintiff

9  appeared by video at a hearing before an administrative law judge (ALJ) on June

10  14, 2016. Tr. 43-109. On August 1, 2016, the ALJ denied Plaintiff's claim. Tr.

11  18-42.

12  At step one, the ALJ found that Plaintiff had not engaged in substantial

13  gainful activity during the period from his alleged onset date of August 26, 2009,

14  through his date last insured of September 30, 2010. Tr. 23. At step two, the ALJ

15  found Plaintiff had the following severe impairments: cervical degenerative

16  arthritis, chronic headaches, cognitive disorder, NOS, and chronic adjustment

17  disorder. Tr. 23. At step three, the ALJ found Plaintiff did not have an impairment

18  or combination of impairments that meets or medically equals the severity of a

19  listed impairment. Tr. 24. The ALJ then concluded that Plaintiff had the RFC to

20  perform light work with the following limitations:

ORDER - 6

> [H]e was limited to standing and walking 4-6 hours in an 8-hour workday; he could perform no overhead work; he could not climb ladders, ropes, or scaffolds; he could frequently balance; he could rarely (10 percent of the workday) to occasionally bend, twist, stoop, and kneel; he could occasionally crouch, crawl, and climb stairs/ramps; he could have no concentrated exposure to extreme cold or heat; he could have only occasional exposure to vibration and moving mechanical parts; he could have no exposure to unprotected heights; he could have occasional exposure to direct sunlight; he could be exposed to no more than moderate noise; he was limited to simple, routine tasks and semi-skilled work; and he would have been off task approximately 10% of the workday on average.

Tr. 26.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 35. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as marker, office helper, and press operator. Tr. 35-36. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 26, 2009, the alleged onset date, through September 30, 2010, the date last insured. Tr. 36.

On October 19, 2017, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability income benefits under Title II of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly determined that Plaintiff's impairments did not meet or equal a listed impairment at step three;

3. Whether the ALJ properly weighed Plaintiff's symptom claims;

4. Whether the ALJ properly weighed lay witness statements; and

5. Whether the ALJ properly determined that Plaintiff could perform other work in the national economy at step five.

ECF No. 15 at 6.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Judy Panek, M.D., Douglas Harris, M.S.P.T, Kelly Wilcynski, Ph.D., Alan Breen, Ph.D., Bruce Laird, D.C., and Fred Cutler, M.Ed. ECF No. 15 at 9-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."
*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).
Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

ORDER - 9

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 404.1513(d) (2013).[1] However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

*1. Dr. Panek*

Dr. Panek testified as a medical expert at the administrative hearing on June 14, 2016. Tr. 62-80. She testified that Plaintiff's headaches from August 2009 through approximately February 2014 were approaching and equaling the listing at

---

[1] Prior to March 27, 2017, the definition of a medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, were located at 20 C.F.R. § 404.1513(d).

11.03, with the addition of 1.04 due to his degenerative arthritis with cervical degenerative disc disease. Tr. 32, 66. The ALJ gave this opinion partial weight. Tr. 32. Because Dr. Panek's opinion was contradicted by Dr. Seroussi, Tr. 417-44, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Panek's opinion that Plaintiff equaled a listing from the alleged onset date until February 2014 was inconsistent with the medical evidence as a whole. Tr. 32. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4) (2012) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). Dr. Panek opined Plaintiff's limitations were attributable in part to constant and severe headaches and degenerative arthritis with paracervical disc disease. Tr. 66. However, the ALJ found that no treating or examining acceptable medical source offered an opinion supportive of Plaintiff's disability. Tr. 31. The ALJ noted that Plaintiff's treating physician, Dr. Packia-Raj, assessed Plaintiff's

work status as "light duty" after a physical examination of Plaintiff on August 25, 2010.  Tr. 32 (citing Tr. 366-67).  The ALJ also indicated that examining physician, Dr. Seroussi, who saw Plaintiff for a clinical evaluation upon referral from Plaintiff's attorney, reported that Plaintiff could perform medium-level work.  Tr. 32 (citing Tr. 441).  The ALJ reasonably concluded that the record contained insufficient evidence of limiting headaches to support Dr. Panek's opinion that Plaintiff met or equaled a listed impairment.  Tr. 32.

Second, the ALJ discounted Dr. Panek's opinion because it was inconsistent with Plaintiff's ability to work.  Tr. 32.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Working with an impairment supports a conclusion that the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).  Here, the ALJ observed that the record contained repeated references to significant ongoing work activity during the period at issue, through the date last insured, and beyond.  Tr. 28-32; *see* Tr. 630 (March 3, 2010: Plaintiff reported during a physical therapy session that his job had been restricted secondary to his ability to work overhead, climb ladders, and lift overhead); Tr. 48-49 (March 30, 2010: Dr. Hufman noted Plaintiff continued to function in his job as a sheet metal worker); Tr. 382 (April 2, 2010: Plaintiff reported he was working full-time as a sheet metal fabricator installer and

that he got regular vigorous exercise); Tr. 469 (August 24, 2010: Plaintiff told his

physical therapist he had returned to activities and had done quite a bit of work

without complaint); Tr. 457, 462 (September 21, 2012: Plaintiff reported feeling

stressed because he had to miss some work, which he noted in a form dated

September 20, 2012, was as a self-employed sheet metal fabricator/installer,

involving "very heavy" work, frequently lifting more than one hundred pounds).

The ALJ specifically noted that a physical therapy record indicated that in August

2010, one month before the date last insured, the provider noted that Plaintiff had

returned to "quite a bit" of work activity without complaint. Tr. 32 (citing Tr.

469). During the hearing, the ALJ asked Dr. Panek to explain how she reconciled

the record evidence of Plaintiff's ongoing work activity with her opinion that

Plaintiff met a listed impairment. Tr. 66-69. Dr. Panek responded that she had

concerns and she was unsure if the record documented consistent full-time work.

Tr. 67. The ALJ reasonably concluded that the record documented work activity

that was inconsistent with Dr. Panek's opinion that Plaintiff met or equaled a listed

impairment. Tr. 32; *see, e.g.*, Tr. 382 (April 2010: Plaintiff reported that he was

working full-time as a sheet metal fabricator installer and was also getting regular

vigorous exercise). This finding is supported by substantial evidence.

Third, the ALJ found that Dr. Panek's opinion was equivocal, and thus

determined the assessment that Plaintiff equaled a listed impairment was

unsupported. Tr. 32. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff argues that, although Dr. Panek acknowledged the case was a difficult one, she held to her opinion that the listings were equaled. ECF No. 15 at 9. Despite Plaintiff's assertions otherwise, Dr. Panek's statements are equivocal. She testified that Plaintiff's headaches were "approaching and equaling constancy at 11.03," revealed that she did have concerns related to the record evidence of Plaintiff's work activities, and noted that it was difficult to assess because they were going back to 2009. Tr, 66-67. The ALJ's decision to reject Dr. Panek's opinion about Plaintiff meeting a listed impairment is within the discretion of the ALJ. This finding is supported by substantial evidence.

Fourth, the ALJ discounted Dr. Panek's opinion because it was based on Plaintiff's self-reports. Tr. 32. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Although Plaintiff asserts that the ALJ's conclusion is erroneous, ECF No. 15 at 11, when prompted to indicate the reason for finding

Plaintiff met a listed impairment, Dr. Panek testified, "[i]t was pretty much based on his self-reports and the fact that there, there is a migrainous part to the headache, too, and then the cervicogenic arthritis." Tr. 70. By Dr. Panek's own admission, her assessment was largely based on Plaintiff's self-reports. Moreover, as discussed *supra*, Dr. Panek's opinion regarding the listed impairments was inconsistent with the overall record, which further indicates that Dr. Panek's opinion relied substantially on Plaintiff's self-reports. Because the ALJ properly found Plaintiff's symptom testimony was not consistent with the evidence, this was a specific and legitimate reason to discredit Dr. Panek's opinion. This finding is supported by substantial evidence.

   *2. Mr. Harris*

   On October 28, 2011, Plaintiff's physical therapist conducted a physical capacity evaluation. Tr. 826. In a statement dated November 9, 2011, Mr. Harris opined that Plaintiff's physical capacity was at the heavy/medium physical demand level at the occasional frequency, but he should be limited to infrequent material handling activities. Tr. 818. Mr. Harris noted Plaintiff had the following abilities: sit for one hour at a time for a total of five hours in an eight-hour day; stand for one hour at a time for a total of seven hours in an eight-hour day; walk for 1.25 hours at a time for a total of six hours in an eight-hour day; lift 50 to 80 pounds occasionally; carry 71 pounds occasionally for 30 feet; left/carry zero pounds

frequently; push with 80 pounds of force occasionally and zero pounds of force

frequently; pull with 75 pounds of force occasionally and zero pounds of force

frequently; and occasionally squat, kneel, bend/stoop, crouch, climb stairs/ladders,

reach overhead, perform fine manipulation, operate foot/hand controls. Tr. 826.

The ALJ gave this opinion partial weight. Tr. 33. Because Mr. Harris was an

"other source," the ALJ was required to provide germane reasons to discount his

opinion. *Dodrill*, 12 F.3d at 918.

Plaintiff argues that the ALJ improperly rejected Mr. Harris' opinion as to

Plaintiff's material handling limitations. ECF No. 15 at 11. Plaintiff's argument is

misplaced. As Defendant asserts, "it does not appear that the ALJ actually rejected

this limitation." ECF No. 16 at 17. A review of Mr. Harris' physical capacity

evaluation form demonstrates that the ALJ incorporated all of Mr. Harris' stated

material handling and non-material handling limitations into the RFC, except for

the limitation to only occasionally perform fine manipulation and operating hand

and foot controls. Tr. 826. The RFC is silent as to any manipulative assessments.

Tr. 26. In giving partial weight to Mr. Harris' opinion, the ALJ stated that Mr.

Harris' assessments were "mostly consistent with Dr. Seroussi's opinion and the

limitations determined herein except for his manipulative assessments." Tr. 33.

Accordingly, the Court will analyze the ALJ's reasons for discounting this part of

Mr. Harris' opinion.

ORDER - 16

1    First, the ALJ found the manipulative limitations noted by Mr. Harris were

2    inconsistent with the record as a whole and were not supported by Mr. Harris' own

3    report. Tr. 33. Relevant factors to evaluating medical opinions include the amount

4    of relevant evidence that supports the opinion, the quality of the explanation

5    provided in the opinion, and the consistency of the medical opinion with the record

6    as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. "[T]he ALJ

7    need not accept the opinion of any physician, including a treating physician, if that

8    opinion is brief, conclusory and inadequately supported by clinical findings."

9    *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). Plaintiff

10   does not cite to any evidence in the record to support a manipulative limitation, and

11   a review of Mr. Harris' own evaluation does not reveal any support for this

12   assertion, Tr. 818-26. Moreover, the ALJ noted that Dr. Armitano conducted a

13   neurological evaluation of Plaintiff on April 2, 2010, and that Plaintiff's fine finger

14   movement was normal. Tr. 29 (citing Tr. 381-85). The ALJ reasonably concluded

15   that there was no support in the record to indicate that Plaintiff was limited to

16   occasionally performing fine manipulation. Tr. 26, 33. This was a germane reason

17   to discredit Mr. Harris' opinion.

18       Second, the ALJ determined that Mr. Harris evaluated Plaintiff's condition

19   at the time of his report, which was more than one year after the date last insured.

20   Tr. 33. Evidence from outside the relevant period in a case is of limited relevance.

ORDER - 17

*Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion, rendered outside the relevant period between the alleged onset date and the date of last insured, was a germane reason to not address the opinion). Plaintiff argues that this is an invalid reason to discount Mr. Harris' opinion, as Dr. Seroussi's report was also done after the expiration of Plaintiff's disability insured status, yet the ALJ assigned great weight to Dr. Seroussi's opinion. ECF No. 15 at 12, Tr. 32-33, 417, 818. The ALJ addressed this issue in the decision, explaining that Mr. Harris' report was based on a concurrent physical capacity evaluation that assessed Plaintiff's condition at the time of his report, while Dr. Seroussi's opinion related primarily to a period before the date last insured. Tr. 33. The ALJ noted that Dr. Seroussi's report included a thorough review of the medical records before the date last insured. Tr. 33. The ALJ reasonably discounted Mr. Harris' opinion as it was issued after the date last insured and assessed Plaintiff's limitations and abilities after the relevant time period. Tr. 33. This was a germane reason to discount Mr. Harris' opinion as to Plaintiff's manipulative limitations.

Third, the ALJ gave greater weight to Dr. Seroussi's opinion than Mr. Harris' opinion because Dr. Seroussi was an acceptable medical source and his report was more thorough. Tr. 33. The ALJ is required to "consider observations

by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill*, 12 F.3d at 918-19.

Plaintiff argues Dr. Seroussi did not perform a material handling activity test and his report was completed prior to Mr. Harris' assessment, so he did not have the benefit of Mr. Harris' evaluation. Tr. 417, 818. For reasons discussed above, Plaintiff's argument that Dr. Seroussi did not perform a material handling activity test is not relevant. However, as to Mr. Harris' manipulative assessment, a review of the record reveals that Dr. Seroussi's 28-page clinical evaluation was done after an evaluation of numerous medical records, Tr. 417-44, while Mr. Harris' report was based on an evaluation of Plaintiff that lasted for three hours. Tr. 818-26. As Dr. Seroussi was also an examining physician, and in the ALJ's opinion, submitted a more thorough report, the ALJ provided germane reasons to discredit Mr. Harris' opinion as to Plaintiff's manipulative limitations.

### 3. Dr. Wilcynski, Dr. Breen, Dr. Laird, and Mr. Cutler

Plaintiff argues the ALJ erred in rejecting the opinions of Dr. Wilcynski, Dr. Breen, Dr. Laird, and Mr. Cutler because they were completed after the date last insured. ECF No. 15 at 13 (citing Tr. 33-34).

Dr. Wilcynski, examining psychologist, conducted a neuropsychological evaluation on December 12, 2012, Tr. 827, completed a work behavior

ORDER - 19

questionnaire form and a mental residual functional capacity assessment form, both

dated April 24, 2013.  Tr. 33, 827-32.  She opined that Plaintiff had some

limitations in most of the basic mental work activity areas, and that he had

moderate limitations in some tasks related to areas of understanding and memory,

sustained concentration and persistence, and adaptation.  Tr. 827-32, 862.

Dr. Breen conducted a forensic independent neuropsychological evaluation

on August 21-22, 2013.  Tr. 833-53.  The ALJ noted that Dr. Breen did not offer an

opinion as to work functioning.  Tr. 34.

In a letter dated March 4, 2016, treating provider Dr. Laird stated he had

reviewed Plaintiff's treatment history and opined that, despite extensive therapy,

Plaintiff had been unable to return to his prior job and many of his activities

remained functionally limited.  Tr. 735.

Mr. Cutler completed a vocational evaluation report of Plaintiff on

September 23, 2013.  Tr. 34.  Mr. Cutler opined that Plaintiff was totally and

permanently disabled and was not capable of sustained employment.  Tr. 302-03.

The ALJ assigned little weight to these opinions because they were issued

well after Plaintiff's date last insured of September 30, 2010.  Tr. 33-34.  Evidence

from outside the relevant period in a case is of limited relevance.  *Carmickle*, 533

F.3d at 1165; *see also Turner*, 613 F.3d at 1223-24 (date of social worker's

opinion, rendered outside the relevant period between the alleged onset date and

the date last insured, was a germane reason to not address the opinion); *see also*

*Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("After-the-fact psychiatric diagnoses are notoriously unreliable.").  Plaintiff contends that because the evidence reflects he was disabled before the date last insured, these opinions were relevant to show ongoing disability, and should have been considered in this context.  ECF No. 15 at 13.  He also argues that because Dr. Breen's opinion was related to mental illness dating back to the motor vehicle accident, it was relevant to disability arising from mental illness during the time period at issue.  ECF No. 15 at 13.  The relevant time period was between August 26, 2009 and September 30, 2010.  All four of these opinions were issued between April 24, 2013 and March 4, 2016, several years after the period at issue.  The ALJ found that medical records indicated conservative treatment was generally effective in managing Plaintiff's symptoms of neck pain and headaches through the date last insured, to the point that Plaintiff was able to continue working as a sheet metal fabricator/installer.  Tr. 31.  These medical opinions from 2013 through 2016 do not establish that Plaintiff was disabled prior to the date last insured, especially considering the evidence of Plaintiff's ongoing work activity through the date last

insured.  The ALJ reasonably discounted these opinions because they were outside of the relevant time period.

**B. Step Three**

Plaintiff asserts the ALJ erred in determining that his impairments did not meet or equal a listed impairment.  ECF No. 15 at 8-9.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments "describes for each of the major body systems impairments [which are considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 404.1525.  To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim.  20 C.F.R. § 404.1525(d).  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  The claimant bears the burden of establishing he meets a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Here, Plaintiff relies entirely on the argument that the ALJ erred in rejecting Dr. Panek's testimony that Plaintiff equaled a listed impairment.  ECF No. 15 at 9.  Dr. Panek testified that Plaintiff's headaches from August 2009 through approximately February 2014 were approaching and equaling the listing at 11.03, with the addition of 1.04 due to his degenerative arthritis with cervical

degenerative disc disease.  Tr. 32, 66.  As discussed *supra*, the ALJ rejected Dr.

Panek's opinion that Plaintiff equaled a listed impairment, finding her assessment

to be inconsistent with the overall record, equivocal, and based on Plaintiff's self-

reports.  Tr. 32.  Dr. Panek testified that she had concerns about reconciling the

record evidence of Plaintiff's ongoing work activity with her opinion that Plaintiff

met a listed impairment.  Tr. 66-69.  Dr. Panek also testified that Plaintiff's

headaches were "approaching and equaling constancy at 11.03," and noted that it

was difficult to assess because they were going back to 2009.  Tr, 66-67.  Further,

by Dr. Panek's own admission, her assessment was largely based on Plaintiff's

self-reports.  Tr. 70.  As determined above, the ALJ provided specific and

legitimate reasons to discredit Dr. Panek's opinion.  The ALJ's determination that

Plaintiff's impairments did not meet or equal a listed impairment was supported by

substantial evidence in the record as a whole.  Therefore, Plaintiff is not entitled to

a finding of disability at step three.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 15 at 13-18.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.[2]  SSR 16–3p, 2016 WL 1119029, at *2.
"First, the ALJ must determine whether there is objective medical evidence of an
underlying impairment which could reasonably be expected to produce the pain or
other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).
"The claimant is not required to show that [his] impairment could reasonably be
expected to cause the severity of the symptom [he] has alleged; [he] need only
show that it could reasonably have caused some degree of the symptom." *Vasquez
v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

    Second, "[i]f the claimant meets the first test and there is no evidence of
malingering, the ALJ can only reject the claimant's testimony about the severity of
the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the
rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are

--------

[2] At the time of the ALJ's decision in August 2016, the regulation that governed
the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p
effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms
in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).  The ALJ's
decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded
effective June 14, 2018, in favor of the more comprehensive SSR 16-3p.  Neither
party argued any error in this regard.

ORDER - 24

insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 26.

### 1. Treatment – Effective in Controlling Symptoms

The ALJ found Plaintiff's testimony was inconsistent with his record of improvement with treatment. Tr. 27. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Here, Plaintiff testified that he was pulled out of physical therapy because "they just weren't giving [him] the correct therapy," and reported that "[d]octors over the past few years have been able to help with some of my pain with steroid injections but they wear off and I am back in pain." Tr. 91, 239. However, the ALJ noted that in the months following Plaintiff's accident, he had significant improvement with medications and physical therapy. Tr. 27-30; *see* Tr. 623 (September 2, 2009: Plaintiff reported to treating physician Dr. Shattuck that

Aleve was helping his neck pain); Tr. 626 (November 3, 2009: after sixteen visits, physical therapist noted that Plaintiff responded well to physical therapy); Tr. 627 (December 9, 2009: Plaintiff reported to Dr. Shattuck that his neck pain had improved somewhat and that Naproxen (Aleve) and Robaxin helped somewhat); Tr. 638-39 (June 15, 2010: Plaintiff reported to Dr. Hufman that therapy helped); Tr. 467 (July 23, 2010: Plaintiff reported to Dr. Hufman that he was no longer experiencing severe migraines and found that overall he was doing much better); Tr. 468 (August 17, 2010: Plaintiff reported to Dr. Hufman that he was going to physical therapy, using Naproxen, Neurontin, and Flexeril and was "definitely feeling like things [were] starting to turn around"); Tr. 469-70 (August 24, 2010: Plaintiff reported continued headaches, neck pain, balance, and coordination problems, but felt that physical therapy had been beneficial).

Plaintiff challenges the ALJ's conclusion by offering evidence that physical therapy was not helpful to him and that any improvement on medication was slight. ECF No. 15 at 14-16; *see* Tr. 622 (September 2, 2009: Plaintiff was very stiff, was in a moderate amount of distress, was very restricted in range of motion, and had a lot of pain and muscle guarding); Tr. 625 (October 8, 2009: treating provider heard an audible pop on extension of Plaintiff's neck, which was associated with a flash of light in vision and was felt by Plaintiff); Tr. 630 (March 3, 2010: Plaintiff's physical therapist stated Plaintiff had been attending physical

therapy for quite a while, but failed to make progress in his cervical range of motion, continued to have daily pain, intermittent hearing loss, and tinnitus); Tr. 368 (March 5, 2010: Plaintiff suffered from constant pain in his neck, had difficulty with balance, and intermittent headaches several times a day, especially with neck extension); Tr. 635 (March 13, 2010: Plaintiff's headaches were not controlled and had increased in intensity); Tr. 381-82 (April 2, 2010: Plaintiff continued to suffer from moderate to severe headaches, which were worsened by physical activity and occurred five times per day); Tr. 640 (June 28, 2010: Plaintiff continued to have quite a bit of difficulty, especially with neck extension); Tr. 386 (July 19, 2010: Plaintiff reported his balance, chronic headaches, and neck pain were worse); Tr. 469 (August 24, 2010: Plaintiff was having falls as well as decreased coordination and balance and he continued to have limited cervical extension); Tr. 372 (August 25, 2010: Plaintiff was treated for his headaches and neck pain, had difficulty with balance, stated he was unable to work, and was also suffering from depressed mood, sleep problems, and anxiety); Tr. 470 (September 7, 2010: Plaintiff's headaches had returned to their previous pain level of seven); Tr. 479 (October 26, 2010: Plaintiff reported that he was back to square one with his neck pain and function); Tr. 360 (November 3, 2010: Plaintiff's neck pain was a 7.5 out of 10). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The

Court will only disturb the ALJ's findings if they are not supported by substantial

evidence. *Hill*, 698 F.3d at 1158. Based on this record, the ALJ reasonably

concluded that the record did reflect some improvement with medication and

physical therapy, which was inconsistent with Plaintiff's symptom claims. The

ALJ's finding is supported by substantial evidence.

### 2. Lack of Supporting Medical Opinion Evidence

The ALJ found Plaintiff's symptom complaints were not supported by the

medical evidence, as no treating or examining medical source offered an opinion

supportive of disability. Tr. 27. An ALJ's credibility finding based in part on a

determination that the claimant's testimony is "unsupported by…any persuasive

reports of his doctors" is not erroneous. *Batson v. Comm'r of Soc. Sec. Admin.*,

359 F.3d 1190, 1196 (9th Cir. 2004). Here, Plaintiff asserts that there are treating

and examining opinions that support disability. ECF 15 at 16. Specifically,

Plaintiff cites to Mr. Harris' opinion that Plaintiff was limited to infrequent

material handling activities. ECF No. 15 at 16 (citing Tr. 818, 824). Plaintiff

asserts this limitation would preclude most unskilled labor and lead to a finding of

disability. ECF No. 15 at 16 (citing Tr. 818, 824). As discussed *supra*, the ALJ

provided specific and legitimate reasons to discredit many of the medical opinions

in the record upon which Plaintiff's argument relies, including the manipulation

limitation described by Mr. Harris. The ALJ also noted that Plaintiff's treating

physician recommended light work, and Plaintiff's own retained litigation expert opined that Plaintiff was capable of light-to-medium work. Tr. 27. Based on this record, the ALJ reasonably concluded that Plaintiff's allegations of complete disability were not supported by the medical opinion evidence. This finding is supported by substantial evidence.

### 3. Lack of Objective Medical Evidence

The ALJ found the objective medical evidence did not substantiate the degree of severity of Plaintiff's alleged complaints. Tr. 27. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch*, 400 F.3d at 680.

Here, the ALJ noted that Plaintiff testified to symptoms that limited his ability to work, such as headaches, neck pain, nausea, hip and leg pain, and abdominal pain. Tr. 26. However, the ALJ determined that the objective imaging in the record did not support the level of impairment alleged. Tr. 28-29, 32-33; *see*

Tr. 345-46 (March 19, 2010: MRI showed no significant abnormality); Tr. 379-80

(March 26, 2010: Plaintiff reported to Dr. Packia-Raj that he was not any better

than the previous visit, however physical examination showed a relatively supple

neck, no lymphadenopathy, no Babinski, no clonus, and no hyperreflexia, although

Spurling maneuver caused some neck pain); Tr. 381-85 (April 2, 2010:

neurological evaluation showed no evidence of abnormal movements or evidence

of drift, strength was five out of five in all extremities and fine finger movement

was normal, cervical spine showed no significant asymmetry, cervical spine had

full range of motion, significant pain on palpation in the suboccipital region at C3

and C4, exacerbated by neck extension).

Plaintiff challenges the ALJ's finding by identifying evidence in the record

that Plaintiff asserts supports his symptom complaints. ECF No. 15 at 16-17; *see*

Tr. 349 (March 2010: MRI of Plaintiff's cervical spine showed a prominent disc

bulge at C5-C6 which indented the thecal sac, foraminal narrowing, disc bulging at

C6-C7 that flattened the thecal sac, and hypertrophy that caused moderate left-

sided foraminal narrowing); Tr. 818, 822, 824 (November 2011: Mr. Harris' report

showed Plaintiff could not sustain activities for extended periods of time, and

could not extend his neck); Tr. 368, 382, 469, 625, 818 (multiple notations about

Plaintiff's inability to extend his neck). It is the ALJ's responsibility to resolve

conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here,

it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must

consider the ALJ's decision in the context of "the entire record as a whole," and if

the "evidence is susceptible to more than one rational interpretation, the ALJ's

decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198

(9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably

concluded, based on this record, that the objective medical evidence did not

support the level of impairment alleged by Plaintiff. Tr. 32-33. The ALJ's finding

is supported by substantial evidence.

*4. Inconsistent Statements About and Ability to Work Despite Impairments*

The ALJ determined Plaintiff's reports of extensive work and other activities

during the alleged period of disability, undermined his allegations of incapacity.

Tr. 27, 31. Working with an impairment supports a conclusion that the impairment

is not disabling. *See Drouin*, 966 F.2d at 1258. Moreover, in determining the

extent to which a claimant's symptom testimony must be credited, an ALJ may

consider the consistency of an individual's own statements made in connection

with the disability review process with any other existing statements or conduct

made under other circumstances. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

Cir. 1996) (ALJ may consider "ordinary techniques of credibility evaluation," such

as reputation for lying, prior inconsistent statements concerning symptoms, and

other testimony that "appears less than candid"); *Thomas*, 278 F.3d at 958-59.

Plaintiff testified that the last time he actually performed work for his business was in 2009. Tr. 55. However, the ALJ noted several instances in the record where Plaintiff reported continued work after the alleged disability onset date of August 26, 2009. Tr. 28-31; *see* Tr. 630 (March 3, 2010: Plaintiff reported during a physical therapy session that his job had been restricted secondary to his ability to work overhead, climb ladders, and lift overhead); Tr. 48-49 (March 30, 2010: Dr. Hufman noted Plaintiff continued to function in his job as a sheet metal worker); Tr. 382 (April 2, 2010: Plaintiff reported he was working full-time as a sheet metal fabricator installer and that he got regular vigorous exercise); Tr. 469 (August 24, 2010: Plaintiff told his physical therapist he had returned to activities and had done quite a bit of work without complaint); Tr. 457, 462 (September 21, 2012: Plaintiff reported feeling stressed because he had to miss some work, which he noted in a form dated September 20, 2012, was as a self-employed sheet metal fabricator/installer, involving "very heavy" work, frequently lifting more than one hundred pounds). The ALJ reasonably determined that Plaintiff provided inconsistent information regarding his work activities during the relevant period. Tr. 31.

Plaintiff argues that the activities cited by the ALJ do not show he is capable of gainful employment, and that the ALJ overlooked many of the daily activities

Plaintiff could not perform, as well as the limited nature of the work activities he was performing. ECF No. 15 at 17. Plaintiff asserts he explained to the ALJ that he supervised his son in sheet metal jobs so his son could earn money, and would then contract out the additional work that was beyond his son's level. ECF No. 15 at 17-18 (citing Tr. 56-57, 93-94). He argues he also explained he was able to help with small items on a workbench for two to three hours a month at most, and that he did work on automobiles as a hobby, but only for a few hours a week. ECF No. 18 (citing Tr. 58, 61). Plaintiff contends he explained these notations may have been made because he introduced himself to the medical professionals as a sheet metal fabricator. ECF No. 15 at 18 (citing Tr. 59). Plaintiff asserts he told the ALJ he was upset by the reports when he read them, but the physical therapist was no longer there, and he did not know what could be done to change a medical record. ECF No. 15 at 18 (citing Tr. 89-90). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Based on this record, the ALJ reasonably concluded that the record reflected reports of extensive work and other activities during the alleged period of disability, which was inconsistent with Plaintiff's testimony. The ALJ's finding is supported by substantial evidence.

In sum, the ALJ identified several clear and convincing reasons supported by substantial evidence for finding Plaintiff's symptom complaints less than credible.

**D. Lay Opinion Evidence**

Plaintiff challenges the ALJ's rejection of the lay witness statements of his wife, Rebecca Marlowe. ECF No. 15 at 18. An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina*, 674 F.3d at 1114; *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony). The ALJ may reject lay opinion testimony that essentially reproduces the claimant's discredited testimony. *See Valentine*, 574 F.3d at 694.

Here, Plaintiff argues the ALJ improperly rejected Mrs. Marlowe's statements because the reasons given for rejecting Plaintiff's testimony were not valid. ECF No. 15 at 18. The ALJ considered a third-party function report dated

September 2014 from Mrs. Marlowe and assigned little weight to her statements because they generally reflected Plaintiff's allegations which were inconsistent with the record as a whole, and they appeared to reflect Plaintiff's functioning as of 2014, four years after the date last insured.[3]  Tr. 34.  Ms. Marlowe described Plaintiff's inability to lift his head up without migraines and excruciating nerve pain that shot down his arms and legs.  *Compare* Tr. 240 *with* Tr. 233 (Plaintiff reports, "I can no longer tip my head up without pain initiating a migraine headache").  Mrs. Marlowe noted Plaintiff could not drive or ride in a vehicle for any length of time without the same symptoms.  *Compare* Tr. 240 *with* Tr. 235 (Plaintiff notes, "I do drive but nor far and not without severe discomfort, lap belt

---

[3] Plaintiff challenged the ALJ's finding that Mrs. Marlowe's opinion was based on Plaintiff's self-reports and failed to challenge the ALJ's finding about the time frame of her statements.  ECF No. 15 at 18.  Thus, any challenge to that finding is waived.  *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief); *Carmickle*, 533 F.3d at 1161, n.2 (determining Court may decline to address on the merits issues not argued with specificity).  However, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record.

ORDER - 36

on abdomen, neck pain sometimes numb legs or hands).  Mrs. Marlowe reported that sexual activity causes the same symptoms.  *Compare* Tr. 240 *with* Tr. 96 (Plaintiff reports, "I haven't been able to have intimacy with my wife without major pains since this accident happened").  As discussed *supra*, the ALJ properly rejected Plaintiff's symptom testimony for multiple clear and convincing reasons. The ALJ accurately found that Mrs. Marlowe's lay opinion reflected the same allegations made by Plaintiff.  Because these statements are similar to Plaintiff's symptom testimony, and the ALJ properly discredited Plaintiff's symptom testimony for several clear and convincing reasons, the ALJ needed only point to the same reasons to discredit these lay statements.  *Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694.  The ALJ did not err in rejecting Mrs. Marlowe's lay opinion.

**E. Step Five**

Plaintiff contends the ALJ's step five finding regarding his ability to perform work was not supported by substantial evidence because the testimony from the vocational expert was based on an improper hypothetical.  ECF No. 15 at 18-20. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389.  In assessing

whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen*, 100 F.3d at 1467. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Id*. The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228. As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray*, 554

F.3d at 1228.  A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Here, Plaintiff asserts the ALJ's hypothetical to the vocational expert failed to account for limitations set forth by Dr. Panek, Dr. Breen, and Mr. Harris.  ECF No. 15 at 19.  As discussed *supra*, the ALJ properly discounted the opinions of Dr. Panek and Dr. Breen, and properly rejected Mr. Harris' manipulative limitations.  Plaintiff cannot establish that the ALJ's step five determination was flawed by simply restating his argument that the ALJ improperly discounted this evidence.

Plaintiff also contends that the RFC and the ALJ's hypothetical to the vocational expert failed to account for two limitations set forth by Dr. Seroussi, to whom the ALJ gave great weight.  ECF No. 15 at 19.  First, Plaintiff asserts that the RFC and hypothetical did not address Dr. Seroussi's opinion that Plaintiff would need to avoid awkward neck postures outside the neutral position and rarely extend his neck.  ECF No. 15 at 19 (citing Tr. 441).  However, the ALJ explained that the RFC incorporated Dr. Seroussi's opinion about neck extension by limiting Plaintiff to no overhead work and no climbing of ladders, ropes, or scaffolds.  Tr. 30-31.  In turn, the hypothetical posed to the vocational expert included no overhead work and no climbing of ladders, ropes, or scaffolds.  Tr. 104.  Plaintiff

has not established that the ALJ's step five determination was flawed for this reason.

Next, Plaintiff argues the ALJ erred by failing to include Dr. Seroussi's limitation that Plaintiff required postural breaks every hour as needed into the RFC and the hypothetical to the vocational expert. ECF No. 15 at 19. Here, the ALJ fully credited Dr. Seroussi's assessed limitations. However, neither the RFC nor the hypothetical posed to the vocational expert discussed or addressed this limitation. Since the ALJ did not articulate how this limitation was accounted for in the RFC, the ALJ erred.

Plaintiff, as the party appealing the ALJ's decision, bears the burden of establishing that he was harmed by an RFC that failed to account for postural breaks as opined by Dr. Seroussi. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Molina,* 674 F.3d at 1115 (quotation and citation omitted).

Here, the ALJ posed hypotheticals to the vocational expert that failed to include the requirement for a postural break every hour as needed. Thus, the ALJ's conclusion regarding jobs Plaintiff could perform and the ultimate non-disability finding were not supported by substantial evidence. The ALJ's error is consequential.

ORDER - 40

The Court remands this matter to the ALJ for the limited purpose of crafting an RFC that includes Dr. Seroussi's postural breaks requirement and to pose hypotheticals to the vocational expert that contain this limitation, or to explain how the current RFC does incorporate Dr. Seroussi's postural breaks requirement.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this Order.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED February 6, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 41